# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMNI HOME FINANCING, INC., KEITH W. MURPHY, ANTHONY A. GAGLIONE, DAVID A. BANCROFT, and OMNI HOME FINANCING, INC. 412(i) DEFINED BENEFIT PLAN,<br><br>Plaintiffs,<br>vs.<br><br>HARTFORD LIFE AND ANNUITY INSURANCE COMPANY, BENEFIT SYSTEMS, INC., PAUL BANNOCK, ANDREW GAGLIONE, CITIGROUP GLOBAL MARKETS, INC. (fka Salomon Smith Barney, Inc.), and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 06CV0921 IEG (JMA)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S PETITION TO COMPEL ARBITRATION AND (2) DENYING IN PART AND GRANTING IN PART DEFENDANT'S PETITION TO STAY PROCEEDINGS**<br><br>[Doc. No. 23] |

Presently before the Court is Benefit Systems's ("defendant") petitions to compel arbitration of the claims in plaintiffs' first amended complaint ("FAC"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and to stay judicial proceedings pending such arbitration. For the reasons discussed below, the Court grants in part and denies in part defendant's petitions.

//

//

//

**BACKGROUND**

**A. Factual Background**[1]

Omni Home Financing, Inc. ("Omni") is a California corporation and employer sponsor of the Omni Home Financing, Inc. 412(i) Defined Benefit Plan ("Plan"). [FAC ¶ 11.] Plaintiffs Gaglione, Murphy, and Bancroft ("principal employees") are principal employees of Omni and individual participants in the Plan. [Id. ¶¶ 12-14, 25.] The purpose of the Plan is to provide retirement benefits for these principal employees and their beneficiaries. [Id. ¶ 15.]

In late 2003, the principal employees formed the Plan to limit Omni's tax liability. [Id. ¶¶ 1, 25.] Omni funded the Plan by purchasing life insurance policies for each of the principal employees. [Id. ¶ 117(a).] In 2004-05, Omni contributed a total of $420,000 to the Plan and claimed all of that amount as a deduction on its federal and California income tax returns for 2003-04. [Id. ¶ 34-35.]

Defendant allegedly "prepared the governing documents for the Plan, the projections of amounts that Omni could contribute to the Plan and deduct on its tax returns, and . . . provided various third-party plan administrative services." [Opp., at 2 (citing FAC ¶¶ 28, 32, 36).] Throughout this process, defendant offered repeated reassurances to plaintiffs that Omni's contributions to the Plan would be tax-deductible. [FAC ¶ 120.] However, defendant did not inform plaintiffs about IRS Announcement 88-51 or IRS Notice 89-25, both of which explained that the Internal Revenue Code prohibited the Plan's structure. [Id. ¶ 69.] Nor did defendant immediately notify plaintiffs on February 13, 2004, when the IRS issued Revenue Ruling 2004-20.[2] [Id. ¶ 70.]

Plaintiffs also did not receive information regarding various other aspects of the life insurance policies before plaintiffs had purchased the policies. [Id. ¶ 66.] For example, defendant failed to provide accurate information regarding the policies' actual cash value [Id. ¶¶ 30, 143.] or

---

[1] The facts in this background relate only to to the defendant who filed the motion presently before the Court, and the plaintiffs. This section does not discuss facts relating to those defendants who did not join in this motion, except to the extent that those facts also relate to the filing defendant.

[2] The Revenue Ruling addresses the circumstances when an employer can deduct contributions to purchase life insurance coverage for participants in a 412(i) defined benefit plan.

the charges and fees that plaintiffs would have to pay for purchase of the policies. [Id. ¶ 66(b).].
Plaintiffs allege that they would not have established the Plan or entered into any transactions if
defendant had informed plaintiffs of these "material facts and circumstances." [Id. ¶ 71.]

**B.   Arbitration Background**

On December 15, 2003, Omni signed defendant's Employee Benefit Plan Service Agreement ("Agreement"). The Agreement states that the signatory employer "hereby retains Benefit Systems, Inc. ("BSI") to provide services for the Employer's Employee Benefit Plan(s) ("Plan") upon and subject to the following terms and conditions[.]" [Def. Exhibit B, at 1.] Paragraph 8 of the Agreement contains the following arbitration clause:

> Any controversy between BSI and Employer arising under the agreement shall be resolved by arbitration pursuant to the Texas General Arbitration Act, Texas Civil Practice & Remedies Code. The parties each shall select an arbitrator with experience in the field of pension-plan administration and/or commercial law. The two selected shall select the third arbitrator. In the event that the two arbitrators cannot agree on a third, the third shall be selected by the Chief or most senior active federal judge on the bench in Austin, Texas.

[Id.]

**C.   Procedural Background**

On April 21, 2006, plaintiffs filed their complaint, stating multiple causes of action under the Employee Retirement Income Security Act ("ERISA") and state law. [Doc. No. 1.] On June 21, 2006, defendant moved to compel arbitration for the first time. [Doc. No. 8.] Plaintiffs then filed an amended complaint on July 6, 2006, adding other defendants. [Doc. No. 13.]

Plaintiffs' FAC states six causes of action: (1) recission and unwinding of all transactions and restoration of all amounts paid by plaintiffs to defendants, pursuant to ERISA; (2) breach of fiduciary duty, fraud, and misrepresentation, pursuant to ERISA; (3) pre-Plan negligent misrepresentation; (4) pre-Plan fraud, deceit, concealment, misrepresentation, and fraudulent acts by agents, pursuant to the California Civil Code; (5) breach of the covenant of good faith and fair dealing; and (6) violations of the Unfair Competition Act and/or Unfair Trade Practices Act.

On August 11, 2006, defendant filed a second petition to compel arbitration. [Doc. No. 23.] On August 23, 2006, plaintiffs filed their opposition. [Doc. No. 31.] On September 1, 2006,

1  defendant filed its reply. [Doc. No. 40.] The matter is now fully briefed, and the Court finds it
2  appropriate for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1).

**DISCUSSION**

**A.     Motion To Compel Arbitration**

1.     Legal Standard

The Federal Arbitration Act governs the enforceability of arbitration agreements in contracts involving interstate commerce. See 9 U.S.C. § 1 et seq.; Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24-26 (1991). The FAA provides: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. An agreement to arbitrate will take precedence over a suit in federal court involving the same subject matter. If a suit is proceeding in federal court, the party seeking arbitration may move the district court to compel the resisting party to submit to arbitration. 9 U.S.C. § 4. Then, the district court, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Id.

The district court must simply "determin[e] (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). The second inquiry is necessary because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Tracer Research Corp. v. Nat'l Envtl. Servs. Co., 42 F.3d 1292, 1294 (9th Cir. 1994) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). In construing the terms of the Agreement, the court "appl[ies] general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in

favor of arbitration."[3] Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996).

The FAA represents a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) (internal quotations omitted). Accordingly, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration[,]" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25. "Federal substantive law governs the question of arbitrability." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999).

The Court proceeds by considering which of plaintiffs' claims are arbitrable and then addressing which plaintiffs must pursue those claims in arbitration.

2. Analysis

    *a.*    *Arbitrability of Claims*

        I.    ERISA CLAIMS

In the Ninth Circuit, an arbitration agreement is unenforceable against a claim of an ERISA violation. Graphic Communications Union v. GCIU-Employer Ret. Benefit Plan, 917 F.2d 1184, 1188 (9th Cir. 1990); James F. Jorden, Waldemar J. Pflepsen, Jr., & Stephen H. Goldberg, ERISA Litigation Handbook § 10.04 (2d ed. 2004). In other words, where the claim arises under the ERISA statute, rather than the benefits plan, arbitration is not required. Graphic Communications Union, 917 F.2d at 1187-88; accord Johnson v. St. Frances Xavier Cabrini Hosp., 910 F.2d 594, 595-97 (9th Cir. 1990; Fujikawa v. Gushiken, 823 F.2d 1341, 1345 (9th Cir. 1987); Amaro v. Cont'l Can Co., 724 F.2d 747, 752 (9th Cir. 1984). Despite the contrary rule in other federal circuits[4] and the possibility that the rule within the Ninth Circuit may change later on[5], the

---

[3] The Agreement states that it "shall be construed under and in accordance with the laws of the State of Texas[.]" [Def. Exhibit B, at 2.] The parties do not bring the Court's attention to any special rule of Texas contract law that would impact the Court's decision of these petitions. Defendant does allude to Texas law in a few instances, but always emphasizes the similarities between Texas and California law on the relevant legal principle. [See Petition, at 6 n.2, 7 n.3.]

[4] Five other federal courts of appeals have held the FAA requires enforcement of an otherwise valid arbitration agreement for statutory ERISA claims. Williams v. Imhoff, 203 F.3d 758, 767 (10th Cir. 2000); Kramer v. Smith Barney, 80 F.3d 1080, 1084 (5th Cir. 1996); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1116 (3d Cir. 1993); Bird v. Shearson Lehman/Am. Express, 926 F.2d 116, 122 (2d Cir. 1991); Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc., 847 F.2d 475, 479 (8th Cir. 1988). These appellate rulings rely on Supreme Court case law enforcing

language in Graphic Communications Union makes clear that this Court ought not compel binding arbitration of plaintiffs' ERISA claims. Applied to the FAC, plaintiffs' first two causes of action clearly arise under ERISA, and not the terms of the Plan.

## II. STATE-LAW CLAIMS

Plaintiffs insist their state-law claims are nonarbitrable because those claims do not "aris[e] under" the Agreement, but instead arose prior to the Agreement. [Opp., at 4-5.] Plaintiffs characterize their state-law causes of action as claims "for fraudulent acts leading up to entering into the Agreement. . . . The allegations in the state causes of action are for fraud in the inducement, meaning acts enticing [plaintiffs] to enter into the Agreement." [Id., at 5.] Plaintiffs' characterization of their state-law causes of action is correct but unavailing.

The Supreme Court has squarely addressed the question "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402 (1967). The Supreme Court held the federal court may decide "if the claim is fraud in the inducement of the arbitration clause itself." Id. at 403. At the same time, "the statutory language

---

arbitration agreements as to claims arising under other federal statutes. See Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 485-86 (1989) (Securities Act of 1933); Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 238 (1987) (1934 Securities Exchange Act); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 (1985) (Sherman Act; Automobile Dealers' Day in Court Act).

[5] A year after Graphic Communications Union, the Central District of California explained the Ninth Circuit's opinion "ha[d] not addressed the several Supreme Court cases [regarding the arbitrability of federal statutory claims] which th[at] Court f[ound] persuasive and binding." Fabian Fin. Servs. v. Kurt H. Volk, Inc. Profit Sharing Plan, 768 F. Supp. 728, 731 (C.D. Cal. 1991). The district court granted the motion to compel arbitration on a claim for breach of fiduciary duty, id. at 734, under 28 U.S.C. § 1104, one of the same ERISA statutes cited by plaintiffs in this litigation. [See FAC, at 1.] Essentially, the district court confined the scope of Ninth Circuit case law on the nonarbitrability of ERISA claims to the single statutory provision the Ninth Circuit had confronted in those prior cases. [See ERISA § 510, 29 U.S.C. § 1140.] Therefore, in the eyes of the Central District of California, claims under any other ERISA provision are subject to arbitration.

Furthermore, the Ninth Circuit recently acknowledged its "skepticism about the arbitrability of ERISA claims" but suggested it had adopted this rule "without taking account of the intervening Supreme Court cases." Comer v. Micor, Inc., 436 F.3d 1098, 1100-01 (9th Cir. 2006). However, the Comer court lacked opportunity to reconsider–and explicitly refused to decide–this issue because the parties conceded the arbitrability of the ERISA claims. Id. Since Graphic Communications Union, the Ninth Circuit has relied on Supreme Court precedent to find that claims under other federal statutes are arbitrable. Simula Inc. v. Autoliv, Inc., 175 F.3d 716, 723-24 (9th Cir. 1999) (Sherman Act; Lanham Act).

1  does not permit the federal court to consider claims of fraud in the inducement of the contract
2  generally." Id. at 404.  The Ninth Circuit has recently reaffirmed that allegations of fraud in the
3  making of an "agreement as a whole must be referred to an arbitrator." Nagrampa v. Mailcoups,
4  Inc., 401 F.3d 1024, 1028 (9th Cir. 2005).

5      Plaintiffs' state-law claims squarely allege fraud in the inducement of the entire
6  Agreement, rather than fraud in the inducement of the arbitration provision.   Therefore, plaintiffs
7  must arbitrate those state-law claims unless the "arising under" language in the arbitration clause
8  somehow does not extend to those claims. The "arising under" language requires arbitration of all
9  disputes "relating to the interpretation and performance of the contract itself." Mediterranean
10 Enterprises, Inc. v. Ssanyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983).  Since "any doubts
11 concerning the scope of arbitrable issues should be resolved in favor of arbitration," Moses H.
12 Cone Mem'l Hosp., 460 U.S. at 24-25, this Court finds that plaintiffs' state-law claims, all
13 generally alleging fraud in the inducement, do relate to the interpretation and performance of the
14 Agreement and are arbitrable. See King v. Prudential-Bache Sec., Inc., 226 Cal. App. 3d 749,
15 753-55 (Cal. Ct. App. 1990) (finding that superior court properly submitted issue of fraudulent
16 inducement to arbitrator, where agreement required arbitration of "[a]ny claim or controversy
17 arising out of this Agreement [or] the interpretation thereof").

18     *b.    Plaintiffs Who Must Arbitrate*
19     I.    O<small>MNI</small>

20     Omni signed the Agreement.  Therefore, it must arbitrate any dispute arbitrable under the
21 Agreement and federal law. "By its terms, the [FAA] leaves no place for the exercise of discretion
22 by a district court, but instead mandates that district courts *shall* direct the parties to proceed to
23 arbitration on issues as to which an arbitration agreement has been signed." Dean Witter
24 Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

25     II.    P<small>RINCIPAL</small> E<small>MPLOYEES AND</small> P<small>LAN</small>

26     The remaining plaintiffs in this claim–the principal employees and the Plan–did not sign
27 the Agreement.  Arbitration agreements may bind nonsignatories "'under ordinary contract and
28 agency principles.'" Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting Letizia

v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1187 (9th Cir. 1986)).  One such principle is equitable estoppel.  Id.  "A nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a 'direct benefit' from a contract containing an arbitration clause."  Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000) (quoting Am. Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349, 353 (2d Cir. 1999)).  A district court within the Ninth Circuit applied this rule to find that a nonsignatory directly benefited from an agreement with an arbitration clause because the nonsignatory received fees from signatories to the agreement.  Legacy Wireless Services, Inc. v. Human Capital, L.L.C., 314 F. Supp. 2d 1045, 1056-57 (D. Or. 2004).  Estoppel against directly benefitting nonsignatories is particularly appropriate where "the nonsignatory ha[s] brought suit against a signatory premised in part upon the agreement."  Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 362 (5th Cir. 2003).  The Ninth Circuit recently refused to apply equitable estoppel to an ERISA plan beneficiary who had sued only under ERISA, and not on the agreement containing the arbitration clause.  Comer, 436 F.3d at 1101-02.

The Court finds that equitable estoppel is appropriate to compel the nonsignatory plaintiffs to arbitrate their state-law claims. The purpose of the Agreement between Omni and defendant is "to provide services for [Omni's] Employee Benefits Plan[.]"  [Def. Exhibit B, at 1.]  The principal employees–who are the Plan's beneficiaries–and the Plan itself receive direct benefits from the Agreement in the form of defendant's administrative services for the Plan.  Furthermore, the state-law claims against Benefit Systems are premised on the Agreement, as plaintiffs' opposition brief makes unmistakably clear.  The gravamen of those state-law claims is that Benefit Systems fraudulently induced the plaintiffs to enter the Agreement.  [Opp., at 5.]

**B.    Petition To Stay**

Once a court "is satisfied that the issue . . . is referable to arbitration . . . , [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had[.]"  9 U.S.C. § 3.  In cases involving both arbitrable and nonarbitrable claims, "the [FAA] requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of

1  separate proceedings in different forums." Byrd, 470 U.S. at 217.  As to non-arbitrating parties,
2  however, the district court has the discretion whether to stay the litigation, pending outcome of the
3  arbitration, "as a matter of its discretion to control its docket." Moses H. Cone Mem'l Hosp., 460
4  U.S. at 20 n.23.

5  The Court grants defendant's petition to stay, but only as to this defendant, and only as to
6  the arbitrable state-law causes of action (i.e., the third, fourth, fifth, and sixth causes of action).
7  Plaintiffs may continue to litigate their first and second causes of action under ERISA against
8  defendant in this Court.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** defendant's petition to compel arbitration of plaintiffs' third, fourth, fifth, and sixth causes of action.  The Court **ORDERS** all plaintiffs to arbitrate these causes of action with defendant.  The Court **DENIES** defendant's petition to compel arbitration of plaintiffs' first and second causes of action.

Additionally, the Court **GRANTS** defendant's petition to stay with respect to the third, fourth, fifth, and sixth causes of action.  The Court **DENIES** defendant's petition to stay with respect to any other defendant and/or any other cause of action.

Furthermore, the Court **ORDERS** that defendant initiate arbitration of the third, fourth, fifth, and sixth causes of action by no later than thirty (30) days from the date when this Order is electronically filed.  This arbitration **SHALL FOLLOW** the procedures laid out in paragraph 8 of the Employee Benefit Plan Service Agreement.

**IT IS SO ORDERED.**

DATED:  November 7, 2006

_____
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**