1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

17

18

19

20

21

22

| | |
|---|---|
| OMNI HOME FINANCING, INC., KEITH W. MURPHY, ANTHONY A. GAGLIONE, DAVID A. BANCROFT, and OMNI HOME FINANCING, INC. 412(i) DEFINED BENEFIT PLAN,<br><br>                                        Plaintiffs,<br><br>     vs.<br><br><br><br><br>HARTFORD LIFE AND ANNUITY INSURANCE COMPANY, PAUL BANNOCK, and DOES 1 through 100, inclusive,<br><br>                                        Defendants. | CASE NO. 06cv0921 IEG  (JMA)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; [Doc. No. 122]**<br><br>**(2) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; [Doc. No. 139]**<br><br>**(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' FIRST MOTION TO STRIKE; [Doc. No. 143]**<br><br>**(4) GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION TO STRIKE [Doc. No. 150].** |

23

24

25

26

27

28

        Presently before the Court are: (1) a motion for summary judgment on all of plaintiffs' claims, filed by defendants Paul Bannock ("Bannock") and Hartford Life and Annuity Insurance Company ("Hartford") (collectively "defendants"); (2) a motion for summary judgment on plaintiffs' claim for rescission, filed by plaintiffs; (3) a motion to strike the evidence in support of plaintiffs' motion for summary judgment, filed by defendants; and (4) a motion to strike the evidence in support of plaintiffs' opposition to defendants' motion for summary judgment, filed by

defendants.  For the following reasons, the Court (1) grants defendants' motion for summary judgment; (2) denies plaintiffs' motion for summary judgment; (3) grants in part and denies in part defendants' first motion to strike; and (4) grants in part and denies in part defendants' second motion to strike.

BACKGROUND

**A.      Factual Background**

The following facts are undisputed.  Omni Home Financing, Inc. ("Omni") is a California corporation and employer sponsor of the Omni Home Financing, Inc. 412(i) Defined Benefit Plan ("the Plan").  Omni is a residential mortgage brokerage firm.  Plaintiffs Anthony Gaglione, Keith Murphy, and David Bancroft are principal employees of Omni and individual participants in the Plan.

Omni's accountant, Richard Goldberg, advised Omni to look into creating a retirement plan after Omni's financial success in 2003.  The Omni principals attended a half-hour meeting with two representatives from a company called Financial Coach in early 2004 and discussed retirement plans.  The Omni principals then contacted Anthony Gaglione's brother, Andrew Gaglione, to discuss further their retirement plan options.  Andrew Gaglione is a financial advisor employed by Citigroup who worked with the Omni principals in their personal investments. Andrew Gaglione referred Omni to Paul Bannock, to further discuss implementing a retirement plan for Omni.[1]

Bannock is a Hartford "account executive" who markets Hartford insurance products, including insurance products for 412(i) plans.  Bannock had previously assisted other financial advisors with the sale of insurance to 412(i) plans.  At Bannock's first meeting with the Omni principals, he asked them questions about the company.   He put this information into a "Plan Design Guide," which he gave to Benefit Systems, Inc. ("BSI"), a plan administrator.  BSI used the information to create a proposal for Omni's 412(i) plan using Hartford insurance products.

---

[1]Plaintiffs have admitted that prior to communicating with Hartford or Bannock, plaintiffs decided to create a 412(i) plan to minimize Omni's income tax liability and communicated with other persons or entities regarding the creation of 412(i) plan.  "412(i)" refers to a former provision of the Internal Revenue Code which allows insurance contract employee benefit plans meeting certain requirements to qualify for favorable tax treatment.  After the 2006 amendments to this section, a similar provision is found in Section 412(e)(3).

06cv0921

Bannock and Andrew Gaglione presented the proposal at two meetings with the Omni principals. The proposal included statements that Omni's contributions to the Plan would be tax deductible.

At these meetings, Bannock gave Anthony Gaglione documents to sign as the trustee of the Plan. These documents included statements that Bannock and Hartford were not providing tax and legal advice and that Omni should seek such advice from its tax and legal advisors. The documents also included information about the treatment of 412(i) plans by the Internal Revenue Service ("IRS").

The Omni principals then decided how much to contribute to the Plan, and BSI created the final plan documents. Omni adopted the Plan in December of 2003, to be effective January 1, 2003. Hartford issued insurance policies to the Plan. Bannock and Andrew Gaglione both received commissions from Hartford for the sale of insurance products to the Plan.

Omni took deductions on its 2003 and 2004 income tax returns in the amount of $420,000 contributed to the Plan in 2004 and 2005. The IRS audited the Plan's return and determined the Plan did not comply with several of the requirements for qualified plans. The IRS therefore disallowed Omni's deductions for amounts contributed to the Plan.

**B.      Procedural Background**

On April 21, 2006, plaintiffs filed their complaint, stating multiple causes of action under the Employee Retirement Income Security Act ("ERISA") and state law. (Doc. No. 1.) The complaint named Bannock, Hartford, and BSI as defendants. On July 6, 2006, plaintiffs filed a First Amended Complaint ("FAC"), adding Citigroup Global Markets, Inc. ("Citigroup") and Andrew Gaglione as defendants. (Doc. No. 13.) On September 25, 2006, the Court granted in part and denied in part defendants' motion to dismiss the complaint, and granted leave to amend certain claims. (Doc. No. 46.) Plaintiffs did not file a second amended complaint. On November 7, 2006, and November 8, 2006, the Court granted in part and denied in part motions to compel arbitration on behalf of BSI and Citigroup. (Doc. Nos. 54 & 55.)

Plaintiffs' surviving FAC states four causes of action: (1) rescission and unwinding of all transactions and restoration of all amounts paid by plaintiffs to defendants, in violation of ERISA; (2) breach of fiduciary duty, fraud, and misrepresentation, in violation of ERISA; (3) pre-Plan

1  negligent misrepresentation; and (4) pre-Plan fraud, deceit, concealment, misrepresentation, and

2  fraudulent acts by agents, in violation of the California Civil Code.

3        On June 16, 2007, the Court granted the parties' joint motion to dismiss defendant

4  Andrew Gaglione.  (Doc. No. 71.)  On November 5, 2007, the Court approved plaintiffs'

5  settlements with BSI and Citigroup.  (Doc. No. 110.)  On November 14, 2007, the Court granted

6  the parties' joint motion for dismissal of these two defendants.  (Doc. No. 115.)  Bannock and

7  Hartford are the only remaining defendants.

8        On December 27, 2007, Magistrate Judge Jan M. Adler denied plaintiffs' motion to

9  amend or withdraw certain admissions.  (Doc. No. 123.)  Plaintiffs' late responses to Defendants'

10  requests for admissions were stricken and the matters deemed admitted.  (Id.)

11  Pending Motions

12        On December 13, 2007, defendants filed a motion for summary judgment.  (Doc. No.

13  122.)  On January 17, 2008, the Court granted the parties' joint motion to postpone the hearing

14  date on defendants' motion for summary judgment until April 14, 2008.  (Doc. No. 130.)  On

15  March 12, 2008, plaintiffs filed a cross-motion for summary judgment.  (Doc. No. 139.)  On

16  March 24, 2008, plaintiffs opposed defendants' motion for summary judgment.  (Doc. No. 142.)

17  On March 31, 2008, defendants filed a motion to strike plaintiffs' summary judgment evidence

18  (the "first motion to strike").  (Doc. No. 143.)  Defendants filed an opposition to plaintiffs' motion

19  for summary judgment on March 31, 2008 (Doc. No. 145), and on April 7, 2008, plaintiffs filed a

20  reply.  (Doc. No. 149.)  Defendants also filed a reply in support of their motion for summary

21  judgment on April 7, 2008 (Doc. No. 148), and a motion to strike the evidence in support of

22  plaintiffs' opposition to defendants' motion for summary judgment (the "second motion to strike")

23  (Doc. No. 150).  Plaintiffs opposed defendants' motion to strike on April 7, 2008.  (Doc. No. 151.)

24  On April 11, 2008, defendants filed replies in support of each motion to strike.  (Doc. Nos. 152 &

25  153.)  The Court heard oral argument on the cross-motions for summary judgment at 10:30 a.m. on

26  April 14, 2008.  Marc Schechter and Susan Meter appeared on behalf of the plaintiffs.  David

27  Jones and Jessica Spangler Taylor appeared on behalf of the defendants.

28  //

DISCUSSION

<u>Legal Standard</u>

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A material issue of fact is a question the trier of fact must answer to determine the rights of the parties under the applicable substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> at 248. Summary judgment may be granted in favor of a defendant on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325; <u>see</u> <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

The moving party bears "the initial responsibility of informing the district court of the basis for its motion." <u>Celotex</u>, 477 U.S. at 323. To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. <u>Id.</u> at 322. However, the moving party is not required to negate those portions of the non-moving party's claim on which the non-moving party bears the burden of proof. <u>Id.</u> at 323. To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. <u>Reese v. Jefferson School Dist. No. 14J</u>, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; <u>Celotex</u>, 477 U.S. at 323). The nonmoving party may not rely on the pleadings but must present specific facts creating a genuine issue of material fact. <u>Nissan Fire</u>, 210 F.3d at 1103. The inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion, but conclusory allegations as to ultimate facts are not adequate to defeat summary judgment. <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1180 (9th Cir. 2002). The Court is not required "to scour the record in search of a genuine issue of triable fact," <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1030

1   (9th Cir. 2001).
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   **I.        Defendants' Motion for Summary Judgment on Plaintiffs' State Law Claims**

2            Defendants argue the Court should grant summary judgment in their favor on plaintiffs'

3   state-law claims for fraud, negligent misrepresentation, concealment and deceit.  To establish each

4   of these state law causes of action, plaintiffs must show they reasonably relied on defendants'

5   misrepresentations.[2]  Defendants argue plaintiffs cannot show reasonable reliance because plaintiff

6   Anthony Gaglione, as trustee of the Plan, signed multiple documents regarding his expectations

7   and the representations made to him.  One document, entitled "Disclosure and Acknowledgment

8   Statement Stag Whole Life in 412(i) or Other Qualified Retirement Plans" included

9   acknowledgments that defendants had not provided tax or legal advice or representations regarding

10  the Plan and that plaintiffs should consult their legal and tax advisors for such advice.[3]  The

11  disclaimers also informed plaintiffs of Revenue Rulings 2004-20 and 2004-21 (discussing the

12  IRS's rules for 412(i) plans) and the fact that the Plan was a listed transaction.[4]  Finally, the form

13  _____

14          [2]See In re Daisy Sys. Corp., 97 F.3d 1171, 1180 (9th Cir. 1996) (negligent misrepresentation under California
    law includes element of justifiable reliance by the plaintiff who does not know that the representation is false); In re Jogert,

15  Inc., 950 F.2d 1498, 1504 (9th Cir. 1991) (fraud); City Solutions, Inc. v. Clear Channel Commc'ns, 265 F.3d 835, 840-41
    (9th Cir. 1991) (deceit).

16          [3] These disclosures were:

17
18      •      The design, adoption and implementation of a 412(i) or other qualified retirement plan can be
               complicated and depends upon the particular facts and circumstances applicable to You.  So, in
               designing and implementing the Plan, You should consult with Your legal and tax advisors.

19             (Defendants' Memo. ISO Motion, Ex. 13 at 1.)

20      •      We are bound by only those promises in the Contracts and no others.  We do not endorse the Plan, its
               design, its adoption or implementation.  Decisions on the advisability of the Plan, its adoption,

21             implementation and design are decisions that are made by You, the Plan sponsor and Plan actuaries
               in consultation with Your legal and tax advisors.  (Id.)

22
        •      Neither We [Hartford] (nor anyone on Our behalf) have made representations to You regarding the

23             federal and state tax consequences (to You or others) of participation in or termination from the Plan,
               transactions involving the Contracts, or any other ERISA or other legal issues, including but not

24             limited to: deductibility of contributions to the Plan; non-discrimination requirements (including
               eligibility, participation, amounts of coverage, and rules governing control groups and affiliated

25             service groups); plan permanency requirements . . . and any funding limitations and requirements.
               (Id.)

26
        [4] These disclosures stated:

27
28      •      NOTE: New Guidance - On February 13, 2004 the U.S. Treasury Department and Internal Revenue
               Service issued proposed regulations and interim guidance on the valuation of life insurance distributed
               or purchased from qualified retirement plan (such as 412(i) or other qualified retirement plans).

1    stated "You have read this form, understand its provisions or have sought legal advice concerning

2    it." (Defendants' Memo. ISO Motion, Ex. 13 at 2.)  The parties dispute whether Anthony Gaglione

3    read this document before signing it.[5]

4            Anthony Gaglione signed a similar form on May 25, 2004, which contained identical

5    disclosures.  (Id. Ex. 19 at 1-2.)  Other documents he signed also included the acknowledgment "I

6    understand that . . . . Neither Hartford Life and Annuity Insurance Company nor its employees, its

7    agents, or its representatives provide tax or legal advice."  (Id. Ex. 16 at 6, Ex. 17 at 6, & Ex. 18 at

8    6.)  Andrew Gaglione stated at his deposition he believed his brother read these documents before

9    signing them.  (Id. Ex. 3 at 101.)  Anthony Gaglione testified he did not read them.  (Plaintiffs'

10   Opp., Ex. 4, at 80.)

11           Defendants argue plaintiffs cannot have reasonably relied on alleged representations

12   which contradicted these disclaimers.  Plaintiffs claim Bannock made the alleged

13   misrepresentations by presenting BSI's proposal to them and orally stating the contributions to the

14   Plan would be tax deductible.  Plaintiffs also claim Bannock failed to inform plaintiffs of the

15   service, eligibility, and contribution requirements of the Plan and failed to inform plaintiffs of the

16   tax risks of the Plan.  (Defendants' Memo. ISO Motion at 20, citing FAC at ¶¶ 27, 38, & 117.)

17   Defendants argue plaintiffs cannot have relied reasonably on these alleged misrepresentations and

18   _____

19           Additional accompanying guidance in Revenue Rulings 2004-20 and 2004-21 discusses deduction and
             non-discrimination issues with respect to such Plans.  (Defendants' Memo. ISO Motion, Ex. 13 at 1.)

20
     •       Pursuant to Revenue Ruling 2004-20, 412(i) (and possibly other qualified retirement plans) with life
21           insurance policies providing certain amounts of excess death benefits are identified as listed transactions
             for which disclosure is required on any applicable tax return.  (Id. at 2.)

22
             [5]During their depositions, Bannock testified Anthony Gaglione read the document before signing it (Defendants'
23   Memo. ISO Motion, Ex. 5 at 109) and Andrew Gaglione testified he "assume[d]" his brother read it (id. Ex. 3 at 76).
     Anthony Gaglione testified in part:
24
             I didn't think I needed to read any of this.  I assumed my brother and Paul Bannock were selling me
25           something that wasn't going to, you know, wreck my business and my personal life.
             I – I just assumed this was all right, you know.  I equate this to a borrower signing docs.  A borrower
26           sits down at my company and signs a whole set of documents, they don't read every page, you know.
             I sell them a good interest rate and charge them a certain amount of money and that's what happens, you
27           know, period.
             So you're asking me why didn't I read it?  I don't know.  I'm pissed I didn't read it.  I wish I read all of
28           it.  We wouldn't have done it if I had read all of this.

     (Plaintiffs' Opp., Ex. 4, at 80.)

omissions because merely by reading the documents they signed, plaintiffs would have known not to rely on the alleged oral statements and would have learned of the IRS's requirements for the Plan.

In opposition, plaintiffs argue the disclosure documents should not preclude finding plaintiffs reasonably relied because Bannock never orally informed plaintiffs of the specific contents of those documents.

Analysis

"Reasonable reliance" under California law ordinarily cannot be shown when written documents contradict alleged oral misrepresentations. Cohen v. Wedbush, Noble, Cooke, Inc., 841 F.2d 282 (9th Cir. 1988) (overruled on other grounds by Ticknor v. Choice Hotels Intern., Inc., 265 F.3d 931 (9th Cir. 2001)). In Cohen, the court upheld an arbitration clause despite allegations the plaintiff was told the contract did not affect any of his rights. The court explained:

> [R]eliance on a misrepresentation is not reasonable when the plaintiff could have, through the exercise of reasonable diligence, ascertained the truth of the matter. Requiring reasonable investigation by the party claiming fraud is particularly appropriate in cases where, as here, the explicit language of the contract directly contradicts the alleged misrepresentation. We see no unfairness in expecting parties to read contracts before they sign them. As the First Circuit stated in Turner, "if a jury is allowed to ignore contract provisions directly at odds with oral representations allegedly made during negotiations, the language of a contract simply would not matter anymore . . . . Contracts would become no more than presumptive statements of the parties' intentions, instead of legally enforceable agreements."

Cohen, 841 F.2d at 287-88 (internal citations omitted). The court found the Cohen plaintiffs, whether or not they had read the agreement, could not have reasonably relied on an alleged misrepresentation contradicted by the "clear and explicit language of the contract." Id. at 288.[6] In Fisher v. Pennsylvania Life Co., 69 Cal. App. 3d 506 (Cal. Ct. App. 1977), the court found plaintiff was bound by the representations in a contract that he:

> had entered into the 1971 agreement in reliance *only* on the representations set forth in that agreement. Such an agreement amounts to a statement, now binding on plaintiff, that any other representations made to him were not material inducements to his execution of the 1971 agreement. Since he thus, in 1971, agreed that he had not relied on the representations on which he now seeks recovery, he cannot now claim otherwise.

---

[6]At oral argument, plaintiffs contended Bannock had a duty to orally disclose the contents of the document. This position was expressly rejected by the court in Cohen. 841 F.2d at 287 ("We know of no case holding that parties dealing at arm's length have a duty to explain to each other the terms of a written contract.").

1   Id. at 511.

2         Plaintiffs argue these cases do not apply because California courts have, in other cases,

3   found express contractual language did not prevent a showing of reasonable reliance on

4   contradictory oral statements.  As plaintiffs note, another California Court of Appeal declined to

5   follow Fisher in 1995, finding a general integration clause does not make reliance on oral

6   statements automatically unreasonable.  Ron Greenspan Volkswagen, Inc. v. Ford Motor Land

7   Dev. Corp., 32 Cal. App. 4th 985 (Cal. Ct. App. 1995).  But other recent cases distinguishing Ron

8   Greenspan have held specific written language directly contradicting alleged oral statements does

9   preclude a showing of reasonable reliance.  Applied Elastomerics, Inc. v. Z-Man Fishing Prods.,

10  No. 06-2469, 2006 WL 3251732 at *6 (N.D. Cal. Nov. 8, 2006) (distinguishing Ron Greenspan

11  because the written disclaimer specifically related to the content of alleged oral

12  misrepresentations); Hinesley v. Oakshade Town Ctr., 135 Cal. App. 4th 289, 300-01 (Cal. Ct.

13  App. 2005) (explaining Ron Greenspan "does not mean the contract provision is in every case

14  irrelevant," and holding parties are bound by provisions in which "express language should have

15  conveyed the implication" oral representations were not to be relied upon).

16        The decisions in Cohen and Applied Elastomerics are more persuasive than Ron

17  Greenspan in this case.  The written disclaimers signed by Anthony Gaglione clearly explained

18  plaintiffs should not rely on defendants for legal and tax advice, and they should consult their own

19  legal and tax advisors.  The contents of the disclaimers were specific and by reading them,

20  plaintiffs would have understood defendants were not providing tax advice.  No facts indicate

21  Bannock or Hartford affirmatively misrepresented the significance of the disclosure documents.

22  Cf. Cohen, 841 F.2d at 287-88 (finding no reasonable reliance on oral representations despite oral

23  misrepresentation regarding significance of contract).[7]  The two "disclosure" documents were only

24  two pages each, and the Omni principals are reasonably sophisticated businesspeople.  Plaintiffs

25  cannot show reasonable reliance on these facts, and defendants are thus entitled to summary

26

27

28       [7]Wilke v. Coinway, Inc., 257 Cal. App. 2d 126 (Cal. Ct. App. 1967), cited by plaintiffs, is also distinguishable because defendants in that case affirmatively misrepresented the significance of the document and the plaintiff in that case had no business experience of any kind. Cf. Hinesley, 135 Cal. App. 4th at 303 (discussing business sophistication of plaintiff).

- 10 -

1  judgment on plaintiffs' state law claims.  Accordingly, the Court does not reach the other grounds

2  advanced by defendants in support of summary judgment on those claims.

3  **II.     Cross-Motions for Summary Judgment on Plaintiffs' ERISA Claims**

4         Plaintiffs move for summary judgment on their cause of action for rescission of the

5  purchase of the Plan's insurance products under 29 U.S.C. §§ 1132(a)(2) & (a)(3).  Plaintiffs argue

6  the undisputed facts show defendants were fiduciaries of the Plan and engaged in a prohibited

7  transaction with the Plan, thereby entitling the Plan to rescind those transactions.  Defendants

8  move for summary judgment on this cause of action and plaintiffs' claim for breach of fiduciary

9  duty pursuant to ERISA, arguing the facts show they were not fiduciaries of the Plan.

10  Legal Standard

11         The parties agree plaintiffs, in order to prevail on either ERISA claim, must show

12  defendants were fiduciaries under the test set forth in Thomas, Head & Griesen Employees Trust

13  v. Buster, 24 F.3d 1114, 1117 (9th Cir. 1994).  The five elements of the Buster test must all be

14  present to conclude defendants were fiduciaries.  Id.  Defendants must have (1) "provided

15  individualized investment advice"; (2) "pursuant to a mutual understanding"; and (3) "on a regular

16  basis."  Id.  The advice must have (4) "pertained to the value of the property or consisted of

17  recommendations as to the advisability of investing in certain property"; and (5) been provided for

18  a fee.  Id.

19  Analysis

20         Each side argues the undisputed facts support summary judgment in its favor as to the

21  fiduciary status of Bannock, Hartford, and Andrew Gaglione.[8]

22         1.     Bannock and Hartford

23         The undisputed evidence shows Bannock does not meet the third prong of the Buster test.

24  Even if Bannock's advice to plaintiffs is properly considered "investment advice," it was not given

25  on a "regular basis."  Bannock allegedly advised plaintiffs to fund the 412(i) Plan with Hartford

26

27 ────────────

28         [8]While Andrew Gaglione is no longer a defendant, his fiduciary status remains relevant because ERISA provides for rescission of a prohibited transaction by a fiduciary.  Thus if Andrew Gaglione is a fiduciary and his receipt of a commission on the Plan's purchase of the insurance products was prohibited by ERISA, the Plan may be entitled to rescind those transactions.

1    insurance products and take corresponding tax deductions.  "Investment advice," as defined in the

2    regulations of the Department of Labor, is "advice to the plan as to the value of securities or other

3    property" or a "recommendation as to the advisability of investing in, purchasing or selling

4    securities or other property."  Buster, 24 F.3d at 1117 (citing 29 C.F.R. § 2510.3-21(c)(1)).

5            While it is a close question whether Bannock provided investment advice, it is clear

6    Bannock's advice was only provided at the outset of the Plan.  Plaintiffs argue Bannock meets the

7    "regular basis" prong because he admits he had an obligation to "service" the account into the

8    future.  Specifically, Bannock testified at his deposition he had "a continuing obligation . . . to

9    assist Andrew Gaglione to the extent that he needs a direction to our policy owner service

10   department, and that is true of all policies that we assist financial advisors with."  (Plaintiffs'

11   Memo. ISO Motion, Ex. 1, at 47.)  This service does not fit the definition of "investment advice."

12          Plaintiffs argue Bannock continued to provide investment advice when he responded to

13   an inquiry from Omni in response to an audit.  On March 8, 2005, Plaintiff Keith Murphy

14   forwarded Bannock an e-mail from his accountant's office inquiring about the Plan.  (Plaintiffs'

15   Opp., Ex. 10.)  The e-mail asked (1) what "type of plan" Omni had; (2) "who are covered"; and (3)

16   "employee contributory?"  (Id.)  Bannock responded:

17                  Omnihome has a Defined Benefit Pension Plan.  The Plan has three participants
                    so far, they are the principals of the business.  As other employees become
18                  eligible, Omnihome will enroll them in the plan.  The pension plan is fully funded
                    by the corporation.  The investment advisor and plan originator is Andrew
19                  Gaglione of Smith Barney.  The Pension Administrator is Benefit Systems of
                    Austin Tx.  the contact at Benefit Systems is Andre Fleener at [number].  I act as
20                  an advisor to Smith Barney on Retirement Planning Solutions.  All tax reporting
                    questions about the plan should be directed to Andre and all investment questions
21                  about the plan should be directed to Andrew.

22   (Id.)  This e-mail merely reported Bannock's understanding of the Plan and did not contain any

23   "investment advice."[9]

24          Thus, Plaintiffs have not met this essential element of the Buster test as to Bannock.  See

25   Buster, 24 F.3d at 1119 ("A finding that the investment advisor rendered advice on a 'regular

26   basis' is essential to a determination that a fiduciary relationship existed.") (internal citations

27

28          [9]At oral argument, counsel also mentioned the Omni principals' decision to make smaller contributions to the Plan
     for fiscal year 2004 and noted this "would have involved" Bannock.  The record contains no facts suggesting anyone at
     Omni discussed this decision with Bannock, and thus the Court disregards this argument.

1   omitted); Damasco & Assocs. 401(K) Profit Sharing Plan v. Mfrs. Life Ins. Co., No. C 99-2135

2   CRB, 1999 WL 672322 at *6 (Aug. 20, 1999) (finding one alleged instance of investment advice

3   is insufficient to meet Buster test); see also Am. Fed. of Unions Local 105 Health Assurance &

4   Welfare Fund v. Equitable Life Assurance Soc'y of the U.S., 841 F.2d 658, 664 (5th Cir. 1988)

5   (holding the "regular basis" requirement is not met by urging purchase of insurance products and

6   not providing additional investment advice after purchase).

7        The only basis advanced for finding Hartford a fiduciary is based on Bannock's actions,

8   and thus Hartford is also not a Plan fiduciary.

9        2.    Andrew Gaglione

10       The undisputed facts also show Andrew Gaglione was not a fiduciary to the Plan.  Under

11  the Buster test, Andrew Gaglione's advice to invest in Hartford's insurance policies must have

12  served as a "primary basis" for plaintiffs' investment decision.  Buster, 24 F.3d at 1117-19, 1123-

13  24; id. at 1117 (citing 29 C.F.R. § 2510.3-21(c)(1)).  Plaintiffs make it clear it was Bannock's

14  interpretation of the deductibility of the contributions to the Plan, not Andrew Gaglione's, that

15  served as the primary basis for their investment decision.  (Plaintiffs' Opp. at 6, 19-22, citing id.

16  Ex. 2 at 61 & 86; see also id. Ex. 3 at 135 (providing plaintiff Murphy's testimony that Bannock

17  was the "major consultant for implementing the plan" and the source for "the majority of the

18  information")).  Andrew Gaglione had never implemented a 412(i) Plan before and for that reason

19  plaintiffs claim they relied solely on Bannock.  (Plaintiffs' Memo. ISO Motion, Ex. 2 at 51;

20  Plaintiffs' Opp. at 6, 19-22.)  Plaintiffs only claim Andrew Gaglione connected them to Bannock.

21  (Plaintiffs' Memo. ISO Motion at 16.)  No evidence indicates Andrew Gaglione evaluated the

22  value of the insurance products or their suitability for Omni.

23       Even if Andrew Gaglione's role was to give investment advice with Bannock, his actions

24  also do not meet the "regular basis" prong of the Buster test.  Plaintiffs rely on Andrew Gaglione's

25  investment advice to the Omni principals prior to the formation of the Plan.  But his fiduciary

26  status with regard to the Omni principals does not translate into fiduciary status with regard to the

27  Plan, nor does his investment advice in other contexts make one-time investment advice to the

28  Plan constitute a "regular basis."  See Pegram v. Hedrich, 530 U.S. 211, 225 (2000) (explaining an

1   ERISA trustee "may wear different hats" and is not necessarily acting as a fiduciary at all times);

2   Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992) (holding fiduciary status is

3   only as to a particular activity, not as to all activities).[10]

4       Accordingly, the Court finds Andrew Gaglione was not a fiduciary to the Omni Plan.  As

5   a result, plaintiffs have not claimed any fiduciary breached a duty or participated in a prohibited

6   transaction, and defendants are entitled to summary judgment on plaintiffs' ERISA claims.

7   **III.    Defendants' Motions to Strike**

8   Legal Standard

9       Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, "the court may order

10  stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or

11  scandalous matter."  A motion to strike "should not be granted unless the matter to be stricken

12  clearly could have no possible bearing of the subject of the litigation.  If there is any doubt

13  whether the portion to be stricken might bear on an issue in the litigation, the court should deny

14  the motion."  Platte Anchor Bolt, Inc. v. IHI, Inc., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)

15  (internal citations omitted).  The court views the pleading in the light most favorable to the

16  nonmoving party.  In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal.

17  2000).

18  Analysis

19      Defendants make several challenges to the admissibility of evidence in support of

20  plaintiffs' motion for summary judgment and plaintiffs' opposition to defendants' motion for

21  summary judgment.  Both the first and second motions to strike object to the same two exhibits

22  and to the same types of statements made by plaintiffs in their briefs.

23  //

24

25      _____

26      [10]In Coleman, the Fourth Circuit overruled a district court which:

27          seemed to regard fiduciary status as an all-or-nothing concept. . . . [T]he inclusion of the phrase 'to the
            extent' in § 1002(21)(A) means that a party is a fiduciary only as to the activities which bring the person
            within the definition. . . . In other words, a court must ask whether a person is a fiduciary with respect

28          to the particular activity at issue.

    969 F.2d at 61.

1    First, defendants move to strike the declaration of Brian Uecker as the Person Most

2  Knowledgeable at BSI.  (Plaintiffs' Memo. ISO Motion, Ex. 15.)  Defendants argue the declaration

3  was not disclosed during discovery and is not based on personal knowledge.  The Court finds the

4  issues moot because the Uecker declaration is not relied upon to establish any fact relevant to the

5  motion for summary judgment.

6    Defendants also move to strike a document purportedly published by Hartford's

7  marketing department.  (Plaintiffs' Memo. ISO Motion, Ex. 19.)  Defendants argue the document

8  is unauthenticated and irrelevant.  The Court finds the Hartford marketing document regarding

9  412(i) plans was properly authenticated by Bannock at his deposition, and denies the motion to

10  strike the document.

11    Finally, defendants argue plaintiffs' briefs made certain arguments and representations

12  which conflict with their deemed admissions.  The deemed admissions which are relevant to this

13  motion are:

14    •   Prior to communicating with Hartford or Bannock, plaintiffs had already decided
           to create a 412(i) Plan to minimize Omni's income tax liability.

15

16    •   Prior to communicating with Hartford or Bannock, plaintiffs had communicated
           with other persons or entities regarding the creation of a 412(i) Plan to minimize
           Omni's income tax liability.

17
     •   Richard Goldberg provided Omni with tax advice in connection with the Omni

18        Plan.

19    Many of the challenged statements, however, do not cover the same substance as the

20  deemed admissions.  The Court grants the motion to strike only as to the statements which do

21  conflict with the deemed admissions:

22    •   "At this point Omni had not decided whether or not to create a defined benefit
           plan or a defined contribution plan." (Plaintiffs' Memo. ISO Motion at 2.).

23
     •    "At the time they met with A. Gaglione and Bannock, they had not done anything

24        to begin the process of setting up a plan, nor had they even decided what type of
           plan they would establish." (Plaintiffs' Opp. to Defendants' Motion at 2.)

25
     •   "At this point Omni had not decided whether or not to create a defined benefit

26        plan or a defined contribution plan." (Id. at 3.)

27  The remaining statements, however, do not conflict and the Court denies defendants' motions to

28  strike those portions of the briefs.

CONCLUSION

For the foregoing reasons, the Court (1) GRANTS defendants' motion for summary judgment; (2) DENIES plaintiffs' motion for summary judgment; (3) GRANTS IN PART and DENIES IN PART defendants' motion to strike plaintiffs' summary judgment evidence, as set out in this Order; and (4) GRANTS IN PART and DENIES IN PART defendants' motion to strike evidence in support of plaintiffs' opposition to defendants' motion for summary judgment, as set out in this Order.

The Clerk of the Court SHALL ENTER judgment in favor of defendants and against plaintiffs and SHALL CLOSE the case.

**IT IS SO ORDERED.**

**DATED:  April 29, 2008**

**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

06cv0921